# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

VALLEY CHILDREN'S HOSPITAL, a
California nonprofit public benefit
corporation,

                    Plaintiff,

v.

GRIMMWAY ENTERPRISES, INC., a
Delaware corporation; and GRIMMWAY
ENTERPRISES, INC. ADMINISTRATIVE
GROUP WELFARE PLAN, an employee
welfare benefit plan.

                    Defendants.

Case No. 1:24-cv-00643 JLT CDB

ORDER GRANTING IN PART MOTION
TO DISMISS

(Doc. 22)

## I.    INTRODUCTION

Valley Children's Hospital brings this action under 29 U.S.C. § 1132(a)(1)(B), asserting rights they claim were assigned to them by their patient, Patient O.[1] They allege Defendants Grimmway Enterprises, Inc. and Grimmway Enterprises, Inc. Administrative Group Welfare Plan wrongfully denied and failed to pay benefits in the amount of $1,797,767.20 owed for Patient O's treatment at the Hospital. Grimmway moves to dismiss the operative First Amended Complaint,

---

[1] As relevant here, 29 U.S.C. § 1132(a)(1)(B), ERISA's civil enforcement provision, allows plan "participants" or "beneficiaries" to bring suit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

1

arguing that Plaintiff lacks standing and has otherwise insufficiently pled their claim. (Doc. 22 at 7–12.) Plaintiff opposes the motion in full, (Doc. 28), and Defendants filed a reply, (Doc. 29.) For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

## II.    BACKGROUND[2]

The Administrative Group Welfare Plan (the "Plan") is an ERISA employee welfare benefit plan operated and administered by Grimmway to provide health benefits to Grimmway employees and their families. (Doc. 18 at 2; ¶ 5.) A third-party, Managed Care Systems ("MCS"), is contracted with the Hospital to act as the Plan's third-party administrator. (*Id.* ¶ 6.)

The Plan, which governs the relationship between Grimmway and individual patients, states that "[m]edical benefits apply when Covered Charges are incurred by a Covered Person for care of an Injury or Sickness and while the person is covered for these benefits under the Plan." (Doc. 18, Ex. B at 21.) The Plan further states that "[e]ach Calendar Year, benefits will be paid for the Covered Charges of a Covered Person that are in excess of any copayments." (*Id.*) The Plan also contained an explicit anti-assignment provision, stating that "any benefit under this Plan cannot be sold, assigned, transferred, pledge or garnished." (*Id.* at 31–32, Ex. B at 18.)

Since 2009, the Hospital has been an in-network provider to the Plan, having contracted for such rights with MCS. (Doc. 18 at 3, ¶ 11.) The relationship between the Hospital and the Plan is governed by the Hospital Services Agreement, which states, in part:

> The parties hereto further agree that MCS or Plan shall be the only person or entity billed, . . . for the Hospital Services rendered hereunder, and that MCS shall be exclusively responsible for the payment and arranging for payment with the Plans for all Hospital Services rendered hereunder. . . . Provider hereby agrees to seek compensation exclusively from Plan for any services rendered to Member under the terms of this Agreement.

(Doc. 18 at 138, Ex. D at § 5.3). Except for copayments, coinsurance, and deductibles, the Hospital agreed to never seek payment from Plan members for Covered Charges. (*Id.*)

The Plan sets forth an appeals process (the "Appeals Process") providing the Hospital with a right to request the review of claim denials and other "Adverse Benefit Determinations." (Doc. 18 at 4–5, ¶¶ 13–14.) The Appeals Process contains a two-year limitations period following

---

[2]  For the purposes of this motion, the Court assumes the truth of the allegations in the FAC.

2

the issuance of a Final Adverse Benefit Determination, (*id.* at 4, ¶ 13) and imposes several specific notice requirements upon MCS as the administrator of the Plan, (*id.* at 5, ¶15). The Hospital alleges that MCS and Grimmway failed to provide these required notices, thus waiving their ability to require compliance with the Appeals Process, including the two-year limitation on claims following a Final Adverse Benefit Determination. (*Id.* ¶ 16.) On February 28, 2022 (mistakenly pled as 2025), the parties entered into a Tolling Agreement tolling the Hospital's claims against Grimmway until July 1, 2022. (*Id.* at 5–6, ¶ 17.) The agreement was later extended until October 1, 2022, resulting in a total tolling period of 216 days. (*Id.*)

Patient O is a minor child covered under the Plan as a dependent of a Covered Person. (Doc. 18 at 6, ¶ 18.) Patient O was born on April 24, 2019, with several serious heart defects. (*Id.*) That same day, she was transferred and admitted to the Hospital for treatment. (*Id.*) Upon admission, Patient O purported to assign to the Hospital her right to recover benefits under the Plan. (*Id.* ¶ 20.) The Hospital then provided physician-approved, medically necessary health services and supplies to Patient O, who was discharged on May 12, 2020. (*Id.* ¶¶ 21–22.)

Pursuant to the Hospital Services Agreement, the Hospital billed Grimmway and the Plan, through MCS, for Patient O's healthcare costs. (Doc. 18 at 6–7, ¶ 23.) These billed costs totaled $8,188,227.20. (*Id.* at 7, ¶ 24.) Of this amount, $4,843,851.72 was the contracted reimbursable amount under the Healthcare Services Agreement. (*Id.* ¶¶ 24–25.) Ultimately, Grimmway only reimbursed the Hospital $3,046,084.21, leaving an outstanding balance of $1,797,767.51. (*Id.*) As a result, the Hospital brings this action for compensatory damages in the amount of $1,797,767.51. (Doc. 18 at 8.)

### III.    LEGAL STANDARD

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Mktg. Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV.    DISCUSSION

Defendants move to dismiss the FAC (Doc. 18) in its entirety on standing grounds. First, they argue that Plaintiff lacks the requisite injury-in-fact to establish Article III standing and 29 U.S.C. § 1132. Alternatively, they argue that the Hospital lacks prudential standing under ERISA because Patient O's assignment of benefits is barred by the anti-assignment provision in the Plan.

### A.  Ordering of Issues

In a case involving rights arising under a federal statute, the standing analysis involves two separate inquiries: whether the plaintiff has Article III standing and whether the claim falls within the statute's "zone of interest," sometimes referred to as "statutory" or "prudential standing." Generally, the Court must first determine whether the "irreducible constitutional

minimum" of Article III standing exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In addition, the Court must determine statutory standing, which "has nothing to do with whether there is case or controversy under Article III." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (1998); *see also Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 934 (8th Cir. 2012) ("By contrast [to Article III standing], statutory standing goes to the merits of the claim.") (citing *Bond v. United States*, 564 U.S. 211, 217 (2011)).

The Supreme Court "has routinely held that when presented with two jurisdictional questions, the Court may choose which one to answer first." *Steel Co.*, 523 U.S. at 115 (Stevens, J. concurring); *see also Sierra Club v. Morton*, 405 U.S. 727, 732–41 (1972) (concluding that the petitioner lacked statutory standing without deciding whether Article III injury existed). There exists no mandatory ordering of jurisdictional issues. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("While *Steel Co.* reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues."). Rather, a court "has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (citing *Ruhrgas*, 526 U.S. at 585; *Steel Co.*, 523 U.S. at 100–01).

Courts routinely consider aspects of prudential standing before Article III. *See*, *e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (assuming Article III standing to decide the case on third-party standing grounds); *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Steel Co.*, 523 U.S. at 92) (noting that class certification issues "pertain to statutory standing, which may properly be treated before Article III standing"); *see also United States v. Approximately $133,803.53 in U.S. Currency Seized from Wash. Mut. Bank, N.A., Acct. #£4420842802, held in the Name of Advantage Fin.*, 683 F. Supp. 2d 1090, 1094 n.3 (E.D. Cal. 2010) ("Because the court concludes that the issue of prudential standing is dispositive, it does not reach the merits of the parties' arguments relating to Article III or statutory standing.") (internal citations omitted). It is "entirely appropriate to deny standing on prudential grounds if that course is easier, or more clearly right, than to rule on constitutional grounds first." 13B Wright & Miller, FED. PRAC. & PROC. JURIS. § 3531.15 (3d ed. 2008). That is the case in this

instance.

### B. Valley Children's Hospital Lacks Derivative Standing Under § 1132(a)(1)(B)

Plaintiff lacks statutory standing because, as currently pled, Patient O's assignment was invalid. Broadly, a valid assignment of healthcare plan benefits from patient to provider confers derivative standing upon the provider. *Misic v. Bldg. Serv. Emp. Health & Welfare Tr.,* 789 F.2d 1374, 1378 (9th Cir. 1986). Further, "[a]n assignment of the right to receive payment of benefits generally includes the limited right to sue for non-payment under § 1132(a)(1)(B) . . ." *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.,* 852 F.3d 868, 877 n.7 (9th Cir. 2017). But providers "lack derivative standing [when] they do not hold valid assignments." *Id.* at 876. Furthermore, "ERISA welfare plan payments are not assignable in the face of an express non-assignment clause in the plan." *Davidowitz v. Delta Dental Plan of Cal., Inc.*, 946 F.2d 1476, 1481 (9th Cir. 1991). An express non-assignment provision relating to a patient's rights or benefits renders any purported assignment of those rights or benefits invalid, depriving the assignee of derivative standing.

The Grimmway Plan contains the following anti-assignment provision:

> **Non-Alienation of Benefits**
>
> With the Exception of a Qualified Medical Child Support Order, your right to any benefit under this Plan cannot be sold, assigned, transferred, pledge or garnished.

(Doc. 18 at 31–32 ("Exhibit B").)[3] With respect to such provisions, the Ninth Circuit's language is broad and unequivocal: "Anti-assignment clauses in ERISA plans are valid and enforceable." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014*)* (citing *Davidowitz*, 946 F.2d at 1481). The anti-assignment provision clearly invalidates Patient O's transfer of "benefits." If Plaintiff seeks to recover "benefits," it is therefore stripped of derivative standing under 29 U.S.C. § 1132(a)(1)(B).

Plaintiff's central argument is that it seeks to recover something *other* than "benefits," and thus the anti-assignment provision does not preclude the claims advanced in this suit. (Doc. 28 at 6–11.) ERISA's civil enforcement provision allows a participant or beneficiary "to recover

---

[3] Plaintiff does not allege that this case involves a Qualified Medical Child Support Order.

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Referring to that statutory text, Plaintiff asserts that because Patient O, a beneficiary, "may also bring a civil action to 'enforce [her] rights under the terms of the [Grimmway Plan,]' . . . by the Assignment[,] Valley Children's Hospital is entitled to enforce Patient O's 'rights' under the Grimmway Plan, [including] the right to have her health care providers paid." (Doc. 28 at 7.) Thus, Plaintiff argues that it does not seek to "recover benefits" on behalf of Patient O at all, instead only attempting to "enforce rights," thereby falling outside the scope of the non-assignment provision. The Court disagrees.

### 1. Benefits Versus Rights

Plaintiff seeks to "recover benefits" under § 1132(a)(1)(B), falling within the scope of the anti-assignment provision and thereby lacking standing under ERISA. The Hospital points to the Plan's language, stating that the "Grimmway Plan documents describe the *rights* of beneficiaries, and they include (1) the payment of 'Covered Charges [] incurred by a Covered Person for care of an Injury or Sickness and while the person is covered for these benefits under the Plan'; (2) which were required to be paid each calendar year; and (3) which are Valley Children's Hospital's usual and reasonable charges. (Doc. 18 at 4, ¶ 12 (emphasis added); (Ex. "C" Medical Plan at 22).) But the quoted language almost immediately trails the Plan's "BENEFIT PAYMENT" section, which states: "Each Calendar Year, *benefits* will be paid *for the Covered Charges of a Covered Person* that are in excess of any copayments. Payment will be made at the rate shown under reimbursement rate in the Schedule of Benefits." (Doc. 18 at 72; (Ex. "C" Medical Plan at 22) (emphasis added).) In other words, the Plan language itself describes payments for "Covered Charges" as *benefits*, not rights. Put another way, by the terms of the Plan itself, to the extent Patient O has any entitlement to monetary reimbursement for a Covered Charge incurred, that entitlement is to a *benefit payment* under the Plan.[4] "[T]he billings of Valley Children's Hospital, as alleged [in the FAC and Opposition brief], were Covered Charges." (Doc. 28 at 6.) Therefore,

---

[4] Because the "benefits" belong solely to Patient O, this remains true regardless of whether the payment is ultimately released directly to Patient O or to a third party like the Hospital.

the Hospital's claim for compensatory damages is an attempt to "recover [Patient O's] benefits" under § 1132(a)(1)(B). Because Plaintiff seeks to stand in Patient O's shoes, attempting to recover payments under the Plan (stemming from a Covered Charge incurred by a Covered Person), it thereby seeks to recover Patient O's "benefits" under the Plan.[5]

This outcome is consistent with both the Ninth Circuit's language in *DB Healthcare* and prior cases in this District. *DB Healthcare* held that the term "benefit" "quite evidently refers to the specific advantages provided to covered employees, as a consequence of their employment, for particular purposes connected to alleviating various life contingencies." 852 F.3d at 874. "Benefits to which a beneficiary [under ERISA] is entitled are bargained-for goods, such as medical, surgical, or hospital care . . ." *Id.* at 875 (quoting *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2d Cir. 2015) (internal citations and quotation marks omitted)).[6] "Although the 'benefits' provided under ERISA plans are often monetary rather than 'goods' in the tangible sense, they are provided only in the event of specified contingencies, as part of an overall compensation package." *Id.* In seeking to "enforce Patient O's . . . right to have her healthcare providers paid [under the Plan]," (Doc. 28 at 7), the Hospital explicitly aims to recover a monetary benefit allegedly provided to Patient O by the Plan in the event of a specified contingency: an incurred Covered Charge. *See also Quaresma v. BC Life & Health Ins. Co.*, 623 F. Supp. 2d 1110, 1127–29 (E.D. Cal. 2007) (interpreting a "Benefits Not Transferrable" clause that stated in relevant part: "The right to benefits cannot be transferred" to strip the healthcare provider of standing to sue for payment of services); *Aviation W. Charters, LLC v. Unitedhealthcare Ins. Co.*, No. CV 2:16-436 WBS AC, 2017 WL 3641763 at *1 (E.D. Cal. Aug.

---

[5] Notably, the Hospital's FAC sues exclusively for Grimmway's failure "to pay benefits as required by the Plan," (Doc. 18 at 8, ¶ 27), titling their singular claim for relief "Failure to Reimburse Health Benefits," (*id.* at 7).

[6] The Hospital points out that *DB Healthcare* also states that "benefits" "are not payment in exchange for any discrete services." 852 F.3d at 875. But they remove that language from its proper context. In *DB Healthcare*, the healthcare provider argued that they *themselves* were a beneficiary under the plan based solely on the fact that they were entitled to payment for their services which were performed pursuant to the plan. In response, the Court held that "[h]ealth care providers' *patients* are thus the ones who receive ERISA health benefits, not the providers themselves." *Id.* (emphasis added). Conversely, the Hospital allegedly aims to enforce just that: its patient's contractually defined benefits under the Plan.

8

24, 2017) (interpreting a provision prohibiting assignment of "Benefits under the Policy to a non–Network provider without [Defendant's] consent" to strip a healthcare provider of standing to bring a reimbursement claim for emergency transportation).[7]

In a factually similar case, *Be Well Providers, LLC v. Anthem Health Plans of Ky., Inc.*, the plaintiff offered the same argument as the Hospital: that the term "benefits" does not include the right to repayment. 580 F. Supp. 3d 477, 483 (W.D. Ky. 2022). The court disagreed, affording the term "benefit" "its apparently plain meaning: a compensated medical service." *Id.* Furthermore, the *Be Well Providers* court found it material that the "plan documents repeatedly use 'benefit' when explaining payments." *Id.* Of course, as described above, both the Grimmway Plan and the Hospital's FAC repeatedly and explicitly refer to "benefits." Similarly, in *Griffin v. Coca-Cola Enters.*, the Eleventh Circuit specifically held that an anti-assignment clause referring to "Benefits under [the plan]" encompassed repayment for medical care, preventing a patient-beneficiary from assigning his right to payment to a provider-assignee. 686 F. App'x 820, 822 (11th Cir. 2017).

The Hospital cites no precedent outside of a singular inapposite passage from *DB Healthcare* to explain why the Court should ascribe a different meaning to the word "benefits." Because the Hospital sues exclusively for compensatory damages resulting from Grimmway's alleged failure "to pay benefits as required by the Plan," (Doc. 18 at 8, ¶ 27), their claim must be dismissed for lack of standing under 29 U.S.C. § 1132(a)(1)(B). Patient O's assignment of rights

---

[7] While less explicit than *DB Healthcare*, other Ninth Circuit cases provide further support for this conclusion. Recently, in *Wit v. United Behav. Health*, the Court discussed the enforcement of rights where, to "avoid the individualized inquiry involved in assessing whether Plaintiffs may be entitled to benefits under the Plan terms, Plaintiffs framed their denial-of-benefits claims as seeking a procedural remedy only." 58 F.4th 1080, 1094–95 (9th Cir. 2023), *opinion vacated and superseded on reh'g*, 79 F.4th 1068 (9th Cir. 2023). While the Court ultimately concluded that the plaintiffs were seeking "benefits," it suggests that claims properly classified as rights-enforcement under § 1132(a)(1)(B) are those which seek "a procedural remedy only." *Id. See also Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1008, 1013–15 (9th Cir. 1997) (speaking in terms of rights enforcement under § 1132(a)(1)(B) where plaintiffs "sought a [procedural] determination that they were entitled to participate in the plan benefits"); *Carrillo v. Humana Health Plan Inc.*, No. CV 20-0004-TUC-SHR (LAB), 2020 WL 6799157 at *4 (D. Ariz. Oct. 15, 2020), *report and recommendation adopted*, 2021 WL 1115976 (D. Ariz. Mar. 24, 2021) ("[T]he most natural interpretation of the phrase 'enforce his rights' is that it allows the participant to assert his *procedural* rights.") (emphasis in original) (citing *Sankey v. Hartford Life & Accident Ins. Co.*, No. 2:09-CV-070, 2010 WL 11639830 at *5 (S.D. Ohio Nov. 1, 2010)).

is invalid, thus depriving the Hospital of standing under ERISA.

### 2. Leave to Amend

The Court can see no way that the failure-to-reimburse claim can be cured, so dismissal of that claim will be without leave to amend. However, there are general allegations in the FAC that point to a claim that may relate to "rights" under § 1132(a)(1)(B). To "enforce [a patient's] rights" under the second clause of 29 U.S.C. § 1132(a)(1)(B) means to enforce those rights "which can be granted under a plan separate and distinct from the recovery of benefits awarded thereunder." *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 650 (3d Cir. 1990)).

Under 29 U.S.C. § 1133, ERISA plans must include an appeals process for participants and beneficiaries. An injunction to enforce that procedural right against improper denial of benefits "fits within the second clause" of § 1132(a)(1)(B). *Cox,* 894 F.2d at 650 (citing, *e.g.*, *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir. 1984), *cert. denied*, 474 U.S. 865 (1985)); *see also Sankey*, 2010 WL 11639830 at *5 (noting that "an action 'to enforce [a beneficiary's] rights under the terms of the plan' includes an action to enforce procedural protections afforded under Section 1133") (quoting *Cox*, 894 F.2d at 650). In other words, if a plan administrator were to deny an ERISA beneficiary's claim for benefits and then deny them their statutorily guaranteed appeals process, the beneficiary may be able to bring suit under § 1132(a)(1)(B) to "enforce their right" to an appeal under the plan.

The Hospital alleges that Defendants "failed to comply with their obligations under the Appeals Process." (Doc. 18 at 4, ¶ 13.)  But these procedural allegations—along with accompanying procedural remedies—are not reflected in Plaintiffs' singular claim for relief, nor in their Prayer for Relief. (*Id.* at 7–8, ¶¶ 26–30); (*Id.* at 8, ¶¶ A–D.) In an abundance of caution, the Court will allow the Hospital an opportunity to amend its complaint to assert a procedural claim to the extent they can, consistent with Rule 11, articulate one that is not barred by the anti-assignment provision.

## V. CONCLUSION

Based upon the foregoing, the Court **ORDERS**:

1. The motion to dismiss is **GRANTED IN PART** in that the failure-to-reimburse

claim is **DISMISSED without leave to amend**.

       2.      The motion to dismiss is **DENIED IN PART** to the extent that the plaintiff may file a Second Amended Complaint (Doc. 18) within 30 days or a notice of dismissal. Failure to timely file either document will result in dismissal of his case with prejudice pursuant to Rule 41(b).

IT IS SO ORDERED.

    Dated:   **March 26, 2026**

UNITED STATES DISTRICT JUDGE

11